UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL C. ANTONELLI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 08-261-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| BRAD CROW, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Michael C. Antonelli is a prisoner confined at the Federal Correctional Institution in Memphis, Tennessee.  Antonelli, proceeding without an attorney, filed this civil rights action under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA").  [R. 3.]  He has paid the $350 filing fee.  [R. 4.]  Having reviewed the complaint,[1] the Court must dismiss it for the reasons set forth below.

---

[1]  The Court conducts a preliminary review of civil rights complaints.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  Because the plaintiff is not represented by an attorney, the complaint is reviewed under a more lenient standard.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  At this stage the Court accepts the plaintiff's factual allegations as true and his legal claims are liberally construed in his favor.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2).

## I.

Antonelli indicates that he was incarcerated at the Federal Correctional Institution in Manchester, Kentucky, during the events described in his complaint.  [R. 3, at 2]  Antonelli's complaint includes 43 claims, comprising 18 *Bivens* claims under the federal Constitution (Counts I through XX) and 24 claims under the FTCA (Counts A through W) arising out of approximately 23 events or circumstances.  Despite their number, the factual basis for these claims is comparatively straightforward.  Antonelli contends that:

1.   the overall conditions of his confinement were unconstitutional.  [R. 3, at 2, 4, 11 (Counts I & A).]

2.   his 100 square foot cell was too small to share with two other inmates. [R. 3, at 11-12 (Counts II & B).]

3.   his cell did not have shelves in it.  [R. 3, at 12-13 (Counts III & C).]

4.   there were not enough microwave ovens for the inmates.  [R. 3 at 13-14 (Counts IV & D).]

5.   there were not enough weights in the recreation area for the inmates.  [R. 3, at 15 (Counts V & E).]

6.   prison staff made him stand too long waiting in line for the commissary. [R. 3, at 15 (Counts VI & F).]

7.   prison staff harassed him for assisting other inmates filing grievances against staff members for harassment.  [R. 3, at 15-16 (Counts VII & G).]

8.   prison food had too much sugar in it.  [R. 3, at 16-17 (Counts VIII, H & I).]

9.   there was an unpleasant smell coming from a sewer vent near the food service area.  [R. 3, at 17 (Count IX).]

10.   prison staff removed him from the Alcoholics Anonymous group in retaliation for filing grievances against program staff.  [R. 3, at 17-18 (Counts X & J).]

11.    a prison staff member smoked a cigarette in front of him.  [R. 3, at 17 (Count K).]

12.    a lieutenant retaliated against him for filing a tort claim.  [R. 3, at 18-19 (Counts XI & L).]

13.    he had to buy a pencil sharpener to do his job at UNICOR.  [R. 3, at 19 (Count XII).]

14.    UNICOR facilities did not have enough toilets, sinks, and mirrors.  [R. 3, at 19 (Counts XIII and M).]

15.    UNICOR employed illegal aliens pending deportation.   [R. 3, at 20 (Counts XIV and N).]

16.    he did not get paid enough for his work at UNICOR.  [R. 3, at 21 (Counts XV and O).]

17.    he should have been paid "grade" rather than "piecework" pay in November 2007.  [R. 3, at 21 (Count P).]

18.    he was fired from UNICOR when he complained about being paid the "piecework" rate.  [R. 3, at 21-23 (Counts XVI, Q, XVII & R).]

19.    a prison staff member negligently paid the same court fees twice.  [R. 3, at 23 (Count S).]

20.    Christmas trees and decorations were taken down to accommodate Muslim prisoners.  [R. 3, at 23 (Counts XVIII and T).]

21.    he was unable to get copies of documents because of an error with his inmate account.  [R. 3, at 24 (Count U).]

22.    the prison suppresses or delays responding to inmate grievances.  [R. 3, at 24 (Counts XIX and V).]

23.    he was transferred to another prison in retaliation for filing grievances. [R. 3, at 25 (Counts XX and W).]

Antonelli states the factual basis for each of these claims in a single sentence or two, accompanied by an assertion that the defendants violated his rights, and coupled with a conclusory allegation of harm.  He has included with his complaint 305 pages of grievances he

3

filed with prison officials regarding his claims [R. 3-2 to 3-13], which he asserts establish that he has exhausted his administrative remedies.

The Court has reviewed each claim, and for the reasons set forth below concludes that each must be dismissed.

## II.

Before addressing Antonelli's constitutional claims under *Bivens*, the Court has reviewed his FTCA claims, and concludes that they must be dismissed.

As a sovereign entity, the United States is immune from claims against it.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The FTCA constitutes a limited waiver of that immunity, permitting suit against the United States for the conduct of its officers, under defined circumstances.  28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."); *Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010).

In each of his FTCA claims (Counts A through W), Antonelli alleges that prison officials failed "to provide suitable quarters and provide for the safekeeping, care and subsistence of plaintiff and to provide for the protection, instruction, and discipline of plaintiff."  [R. 3, at 11-25.]  This language is taken, nearly verbatim, from 18 U.S.C. § 4042(a), which provides that:

(a)  The Bureau of Prisons, under the direction of the Attorney General, shall -

(2)   provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States ...

(3)  provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

18 U.S.C. § 4042(a)(2), (3).

4

However, the limited waiver found in the FTCA is subject to certain exceptions. Relevant here is the "discretionary function" exception, which absolves the United States of liability for "[a]ny claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency ..."  28 U.S.C. § 2680(a); *Smith v. Snyder*, 2006 WL 379516, at *4 (E.D. Ky. 2006).   The exception applies where government officials must exercise their discretion in choosing how to act because there is no statute or regulation that requires a specific course of action, and that discretion is guided by competing public policy considerations.  *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).  In order to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," the plaintiff must rebut a "presum[ption] that the [government] agent's acts are grounded in policy when exercising that discretion."  *United States v. Gaubert*, 499 U.S. 315, 323, 324 (1991).

Applying these principles, courts have uniformly held that while 18 U.S.C. § 4042 imposes upon the BOP a general duty to provide for the safety and care of federal prisoners, the statute does not require it to do so in any specific manner.  *Cf. Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("[w]hile it is true that [§ 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty.").  Because the BOP is vested with discretion as to the best means to carry out Section 4042's mandate, the "discretionary function" exception of the FTCA insulates its actions from judicial "second guessing" through prisoner-initiated litigation.  *Cohen v. U.S.*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the

5

BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception.").

FTCA claims which contend that various conditions of a prisoner's confinement violate Section 4042 therefore fall within the discretionary function exception, and the Court lacks subject matter jurisdiction to entertain them. *Smith v. Snyder*, 2006 WL 379516, at *6-7 (E.D. Ky. 2006) (*citing Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)); *McLendon v. U.S.*, 2006 WL 3716794, at *3 (W.D. Va. 2006); *Harris v. U.S.*, 2006 WL 2583435, at *6 (N.D. W.Va. 2006). Courts have reached this result not only with respect to conditions of confinement claims in general, but also specifically with respect to the types of claims Antonelli asserts here. *See, e.g., Lineberry v. U.S.*, 2009 WL 763052, at *3 (N.D. Tex. 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception of the FTCA, and thus falls outside the FTCA's limited waiver of sovereign immunity.  Consequently, the Court lacks FTCA jurisdiction over this claim."); *Jones v. U.S.*, 2011 WL 2117603, at *5 (W.D. La. 2011) (same); *Legree v. U.S.*, 2006 WL 2190580, at *3-5 (N.D. Fla. 2006) (BOP's decisions regarding storage of inmate's personal property fit within discretionary function exception); *Rodriguez v. U.S.*, 415 F. App'x 143 (11th Cir. 2011) (decisions regarding exercise equipment provided to prison are discretionary); *Smith v. Snyder*, 2006 WL 379516 (E.D. Ky. 2006) (claim challenging prison's response to accumulation of bird feces on prison grounds falls within exception); *Manning v. Flock*, 2012 WL 1078227, at *16 (M.D. Pa. 2012) (prison's decision as to how best accommodate the needs of prisoners with limited mobility falls squarely within discretionary function exception); *Santos v. U.S.*, 2006 WL 1050512, at *2 (5th Cir. 2006) (implementation of

non-smoking regulations were "left to the sound discretion of prison administrators."); *Enigwe v. Zenk*, 2007 WL 2713849, at *8-9 (E.D.N.Y. 2007) (same).

In addition, Antonelli's FTCA claims assert in the most general terms that the defendants acted wrongly or improperly in taking certain actions, such as by failing to correctly document the reasons for his withdrawal from the Alcoholics Anonymous group, paying him a "fair" wage for his work at UNICOR, properly disbursing his inmate trust funds, or responding promptly to his grievances. Nowhere in this litany of perceived wrongs, however, does Antonelli indicate an allegation of physical harm. 28 U.S.C. § 1346(b)(2) expressly provides that a prisoner may not sue the United States under the FTCA "for mental or emotional injury suffered while in custody without a prior showing of physical injury." Prisoner suits for purely emotional harm therefore do not fall within the limited waiver of sovereign immunity provided by the FTCA, and the Court lacks subject matter jurisdiction to entertain them. *Cf. Michtavi v. U.S.*, 345 F. App'x 727, 728-29 (3d Cir. 2009) (Section 1346(b)(2) precluded prisoner's FTCA claim that prison officials caused him emotional distress by falsely accusing him of wrongdoing); *Antonelli v. Tipton*, 356 F. App'x 903 8th Cir. 2009); *Murphy v. U.S.*, 1997 WL 352992, at *1 (10th Cir. 1997) (mere brief exposure to materials containing asbestos failed to satisfy physical injury requirement).

Finally, many of Antonelli's FTCA claims, like those involving religious discrimination or retaliation for exercising his right to expression or to seek redress for grievances, are predicated upon constitutional protections. In addition to be being barred for the reasons set forth above, these claims necessarily fail because the United States has not waived its sovereign immunity against constitutional torts. *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Punchard v.*

*U.S. Bureau of Land Mgmt.*, 180 F. App'x 817, 819 (10th Cir. 2006); *Spotts v. U.S.*, 613 F.3d

559, 565 n.3 (5th Cir. 2010).

**III.**

The Court will address each of Antonelli's constitutional claims under *Bivens* in turn.

**A.**

Antonelli first claims in Count I of his complaint that from June 12, 2007 to February 7,

2008, "the totality of circumstances ... of my conditions of confinement ... encompassing all

other counts in this suit" were unconstitutional.  [R. 3, at 2.]  "This is a generic count claiming

the comprehensive unconstitutional conditions at FCI Manchester."  [R. 3, at 4.]

Because Antonelli does not allege that he was deprived of a specific human need in this

count, this *Bivens* claim fails as a matter of law.  As the Supreme Court has explained:

> Some conditions of confinement may establish an Eighth Amendment violation
> "in combination" when each would not do so alone, but only when they have a
> mutually enforcing effect that produces the deprivation of a single, identifiable
> human need such as food, warmth, or exercise - for example, a low cell
> temperature at night combined with a failure to issue blankets.  To say that some
> prison conditions may interact in this fashion is a far cry from saying that all
> prison conditions are a seamless web for Eighth Amendment purposes.  *Nothing
> so amorphous as 'overall conditions' can rise to the level of cruel and usual
> punishment when no specific deprivation of a single human need exists.*

*Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) (emphasis added).  Courts have long applied this

rule to deny Eighth Amendment claims that, like Antonelli's, fail to point to a deprivation of a

particular human need, such as food, clothing, shelter, or health care.  *Cf. Simmons v. Holt*, 2010

WL 2079978, at *8 (M.D. Pa. 2010) ("The focus must be on the deprivation of a particular basic

necessity."); *Smith v. Middlebrook*, 2007 WL 2728398, at *3-4 (N.D. Fla. 2007) ("to the extent

that Plaintiff has alleged deterioration in the overall quality of life at FCI Marianna and reduction

in the services provided to inmates by staff, he has not stated an Eighth Amendment claim."). Having failed to point to a deprivation of a particular fundamental human need in this claim, it fails as a matter of law.

## B.

In Count II, Antonelli complains that from July 1, 2007 to August 1, 2007, he "was forced to live in a cell approximately 100 square feet with two other persons which was a three-man cell with three beds in it. This was gross overcrowding." [R. 3, at 11, R. 3-2, at 19.] He contends that wardens Grondolsky and Hogsten violated his constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments. [R. 3 at 12.]

Antonelli asserts that he exhausted his *Bivens* claim by filing the grievance documents set forth in his exhibits numbered #10 through #17. [R. 3, at 11.] Those documents [R. 3-2, at 11-18], however, conclusively establish that Antonelli never properly exhausted his administrative remedies.

As a threshold matter, the Supreme Court has made clear that a plaintiff's failure to exhaust administrative remedies as required by 28 U.S.C. § 1997e(a) is an ordinary affirmative defense, and is therefore a matter upon which the defendants bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 212-13 (2007). In so holding, however, the Court expressly noted immediately thereafter that:

> [i]f the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim ... [w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim *depends on whether the allegations in the complaint suffice to establish that ground* ... [emphasis added]   *See Leveto v. Lapina*, 258 F.3d 156, 161 (C.A.3 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense ... appears on its face" (internal quotation marks omitted)).   *See also Lopez-Gonzalez v. Comerio*, 404 F.3d 548, 551 (C.A.1 2005) (dismissing a complaint barred by the statute of

9

limitations under Rule 12(b)(6)); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (C.A.2 1998) (dismissing a complaint barred by official immunity under Rule 12(b)(6)).

*Id*. at 215.  Since *Jones* was decided, courts have dismissed claims upon screening where the complaint itself makes clear that the prisoner has not properly exhausted the claim.  *Cf. Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) ("Under *Jones*, however, a court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust."); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint."); *Oleson v. Bureau of Prisons*, 411 F. App'x 446 (3d Cir. 2011); *Mlaska v. Shah*, 428 F. App'x 642, 644 (7th Cir. 2011); *Newson v. Steele*, 2010 WL 3123295, at *4 (E.D. Mich. 2010); *Gunn v. Kentucky Dept. of Corr.*, 2008 WL 2002259, at *4 (W.D. Ky. 2008).

With respect to his overcrowding claim, instead of filing a grievance with the warden as required by 28 U.S.C. § 542.14(c)(4), Antonelli filed a "sensitive" Form BP-230 under 28 C.F.R. § 542.14(d)(1) with the Mid-Atlantic Regional Office ("MARO") on September 28, 2007, complaining of overcrowding in his cell.  [R. 3-2, at 11.]  On October 5, 2007, MARO properly rejected that grievance as not "sensitive" because the issue raised was not one that would place "the inmate's safety or well being ... in danger if the Request became known at the institution." [R. 3-2, at 12.]  Instead of promptly refiling the grievance at the institutional level as directed by MARO, Antonelli waited over two months and filed a new grievance on the same subject..[R. 3-2, at 16.]  But instead of waiting 20 days for a response from the warden as required by 28

C.F.R. § 542.14(a), five days later he simply filed a new "appeal" with MARO [R. 3-2, at 17] which was again rejected by MARO because it was filed at the wrong level.  [R. 3-2, at 16.]

Federal law requires inmates to "properly" exhaust their administrative remedies, meaning they must adhere in all respects to the procedures set forth in the administrative process and comply with all rules and deadlines.  *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").  It is well-established that a federal prisoner who attempts to bypass the normal grievance procedure by filing a "sensitive" grievance with the regional office has failed to properly exhaust his administrative remedies.  *Cf. Williams v. Pettiford*, 2007 WL 3119548, at *9-10 (D.S.C. 2007) (prisoner who failed to re-file grievance at institutional level after regional office rejected it as not "sensitive" failed to exhaust administrative remedies); *Wilson v. Mitchell*, 2011 WL 1883030, at *4 (D.S.C. 2011); *Cyrus v. Woneldorf*, 2007 WL 2155694, at *7-8 (M.D. Pa. 2007) ("A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim.") (internal quotation marks omitted).  Because the documents filed by Antonelli establish that he did not properly exhaust his administrative remedies prior to filing suit, this claim must be dismissed.

In addition, this claim is substantively meritless because there is no constitutional right to any particular amount of space in a cell.  *Rhodes v. Chapman*, 452 U.S. 337 (1981) (two inmates sharing a 63 square feet cell does not violate the Eighth Amendment); *Union County Jail Inmates v. DiBuono*, 713 F.2d 984 (3d Cir. 1983); *Webb v. DeBoo*, 2012 WL 1068213, at *5-6

(N.D. W.Va. 2012) (collecting cases); *Fischer v. Ellegood*, 2007 WL 1624315, at *4 (11th Cir. 2007); *Stevenson v. Whetsel*, 52 F. App'x 444, 446 (10th Cir. 2002).

**C.**

In Count III, Antonelli alleges that from June 12, 2007, until July 1, 2007, there were no shelves in his cell, which prevented him from placing his belongings in an orderly manner. He indicates that he then purchased shelves from another inmate and had them installed by yet another at a cost of approximately $37. Antonelli contends the absence of shelves in his cell rendered his living conditions "inhumane," but does not allege any injury or harm resulted. He claims violation of rights under the First, Fifth, Eighth and Fourteenth Amendments. [R. 3, at 12.]

Antonelli filed a sensitive Form BP-230 with MARO on September 26, 2007, complaining that unlike other prisoners, his locker did not have shelves. [R. 3-2, at 22.] MARO rejected the grievance on October 2, 2007, because the issue raised was not sensitive. [R. 3-2, at 23.] Antonelli did not file a grievance with the institution until January 11, 2008. [R. 3-2, at 25.] Instead of waiting for a response from the warden within 20 days as required by 28 C.F.R. § 542.18, Antonelli filed a Form BP-230 with MARO nine days later, [R. 3-2, at 26] which was promptly rejected because it was filed prematurely. [R. 3-3, at 1.] Antonelli did not appeal that rejection until March 5, 2008. [R. 3-3, at 3.] On appeal it was rejected by the Central Office on the same grounds stated by MARO. [*Id.*]

As with his prior claim, it is clear that Antonelli failed to properly exhaust this claim. First, he did not file his initial grievance until September 26, 2007, more than three months after June 12, 2007. BOP regulations require an initial grievance to be filed within 20 days after the

events complained of, 28 C.F.R. § 542.14(a), and his grievance was therefore untimely.   In addition, he filed his initial grievance with MARO rather than with the warden. Once MARO rejected the grievance and directed him to cure the palpable defect, he failed to comply.   He fared no better on his second attempt when he filed a premature appeal before the warden even responded to his initial grievance.  Because Antonelli failed to comply with the BOP's guidelines regarding filing inmate grievances, he has failed to exhaust his administrative remedies. *Williams*, 2007 WL 3119548, at *9-10.

Furthermore, Antonelli's claim is time barred.  Antonelli alleged that he was placed in a cell without shelves in June 2007.   [R. 3, at 12; R. 3-3, at 4.]   The limitations period for constitutional torts committed in Kentucky is one year.  Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003).   Antonelli was therefore required to bring suit regarding this claim on or before June 2008, but he did not file suit until August 5, 2008 [R. 3 at 26] under the prison mailbox rule.   *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).   Of course, because a prisoner must exhaust his administrative remedies before filing suit, the limitations period is ordinarily tolled while he does so.   *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).   But because such tolling is an equitable remedy, it is not granted where the plaintiff failed to properly and diligently pursue such remedies.  *Cuco v. Federal Medical Center - Lexington*, 2006 WL 1635668 (E.D. Ky. 2006), *aff'd*, 257 F. App'x 897 (6th Cir. 2007); *Santiago v. Snyder*, 211 F. App'x 478, 480 (7th Cir. 2006).   Here, it is plain that Antonelli's inmate grievances were both late and improperly filed, and equitable tolling is not warranted. *Petty v. Rush*, 2010 WL 1796573, at *7-8 (E.D. Ky. 2010).   This is particularly true here, as Antonelli is an experienced *pro se* litigator with a history of prison litigation that reaches back

two decades, and has been involved hundreds of claims raised in dozens of cases challenging all aspects of his confinement. *Antonelli v. Hastings*, 2007 WL 1309572, at *5 (E.D. Ky. 2007).

Even if this were not so, the claim is substantively without merit. The fact that a prison cell may lack certain accoutrements, such as a mirror, desk, or shelves, does not violate the Eighth Amendment. *Scott v. C/O Bradley*, 1996 WL 209706, at *1 (N.D. Cal. 1996). "Although ladders to the top bunk and shelves, desks and chairs might have made [prisoner-plaintiff's] cell more pleasant, these items are hardly a life necessity." *Sherman v. Lane*, 1998 WL 111649, at *7 (N.D. Ill. 1998); *Jeffries v. Reed*, 631 F.Supp. 1212, 1219 (E.D. Wash. 1986) (lack of desk, shelves, mirrors, and hangers in cell, and coveralls rather than regular jail-house clothing, did not involve "necessities of life" and thus, did not violate the Eighth Amendment). Antonelli's allegations fail to state a claim upon which relief can be granted.

## D.

Antonelli next claims in Count IV that due to overcrowding at the prison, from June 12, 2007, to January 24, 2008, there were not enough microwave ovens to permit all of the inmates who worked overtime for UNICOR to eat, so they had to choose between eating or taking a shower before returning to their cells in the evening. [R. 3, at 13.]

First, Antonelli again failed to properly exhaust this claim. While he alleges these conditions existed as early as June 12, 2007, he did not file an inmate grievance regarding his concern about the number of microwave ovens until November 11, 2007, well after the twenty days permitted by 28 C.F.R. § 542.14(a). In addition, that grievance was filed as a "sensitive" grievance with MARO, which was properly rejected on November 21, 2007. [R. 3-3, at 8-9.] Antonelli did later file a grievance at the institutional level on January 12, 2008, but as before,

14

did not wait for a response from the warden before appealing to MARO on January 20, 2008. [R. 3-3, at 10-11.]  Antonelli did not attempt to cure subsequent rejections by both MARO and the Central Office on January 29, 2008, and March 17, 2008, respectively.  [R. 3-3, at 12, 14.] Having failed to satisfy a statutory precondition to bringing suit, 42 U.S.C. § 1997e(a), these claims must be dismissed.  *Wilson*, 2011 WL 1883030, at *4.

Antonelli's claim also fails under an Eighth Amendment analysis.  Neither limited access to, nor an insufficient amount of, microwave ovens in a prison is a sufficiently serious deprivation rising to the level of an Eighth Amendment violation.  *Miska v. Middle River Regional Jail*, 2009 WL 1916726, at *4 (W.D. Va. 2009); *Schroeder v. Corrections Corp. of America*, 2008 WL 373478, at *2 (N.D. Ohio 2008) ("There is nothing in the complaint which suggests that no hot meals, television, microwave ovens, telephones, vocational or education training, or recreation for five days constitutes the type of deprivation which triggers Eighth Amendment protections."); *Banks v. York*, 515 F. Supp.2d 89, 106 (D.D.C. 2007).

## E.

In Count V, Antonelli alleges that  from June 12, 2007 to January 24, 2008, there were not enough weights for all of the inmates to use in the exercise area, causing other inmates to hoard them and sell access to them.  Antonelli contends that as a result he was deprived of sufficient access to exercise facilities, but makes no allegation that he suffered any resulting injury.  [R. 3, at 14.]

For the same reasons articulated with respect to his claim regarding shelving and microwave ovens, this claim is not exhausted, is barred by the statute of limitations, and is substantively meritless.  Antonelli's initial grievance was filed on November 16, 2007, five

15

months after he alleges the events about which he complained occurred, rendering it untimely under 28 C.F.R. § 542.14(a).  He improperly filed that grievance as "sensitive" at the regional level, a characterization properly rejected by MARO.  [R. 3-3, at 17-18.]  While he later filed a grievance at the institution level on January 14, 2008, he did not wait for a response before appealing to the regional level, and when MARO and the Central Office properly rejected his appeals, Antonelli subsequently failed to cure  those palpable defects.  [R. 3-3, at 19-23.] Having failed to do so, his claims must be dismissed for failure to properly exhaust administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.").  Because Antonelli did not make a good faith effort to comply with the BOP's rules for filing inmate grievances, he is not entitled to the equitable tolling necessary to save his claims from a self-evident time bar. *Petty v. Rush*, 2010 WL 1796573, at *7-8 (E.D. Ky. 2010).

Antonelli's allegations also fail to state an Eighth Amendment claim.  An inmate has a constitutional right to maintain their health, but limitations on an inmate's ability to exercise only implicate that right when the limitations are so severe that "movement is denied and muscles are allowed to atrophy." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988).  Where the inmate retains the ability to retain physical fitness through alternative means, such as by jogging in place, or doing aerobic exercises or pushups, this concern is not implicated. *Id*; *Poco v. Hompe*, 2003 WL 23185882, at *11-12 (W.D. Wis. 2003) (prison's exercise room did not violate the Eighth Amendment although it was indoors and lacked exercise equipment because it was large enough for the prisoner to run and do calisthenics); *Ramirez v. McCaughtry*, 2004 WL 1920219, at *5 (W.D. Miss. 2004)("Although petitioner may prefer more space and some work out

equipment in the exercise cell, nothing in petitioner's complaint suggests that he is unable to exercise.")  Antonelli makes no allegation that he was entirely deprived of the right to exercise, only that his access to weight machines was limited.  Such an allegation fails to state a claim of constitutional dimension.  *Littler v. Indiana Dept. of Corr. Com'r*, 2011 WL 2729523, at *4 (N.D. Ind. 2011) (because prisoner did not allege that prison exercise policy caused muscle deterioration or other actual medical injury, he stated no Eighth Amendment claim).

**F.**

In Count VI of this complaint, Antonelli vaguely alleges that from June 12, 2007, to January 24, 2008, he was forced to "hobbl[e] to the inmate commissary" and "stand an inordinate amount of time" which he contends is "[d]iscrimination because of disability."  [R. 3, at 15.]  The true nature of this claim is made clear only after review of his inmate grievances, in which he alleged on September 19, 2007, that at some point in late August or early September 2007, officer Duck only gave inmates in Antonelli's unit a few minutes to get in line for the commissary, which he contends was not enough for him because he walks with a limp.  [R. 3-3, at 51.]

The record establishes that Antonelli failed to properly exhaust this claim.  Because he improperly filed this as a "sensitive" grievance with the regional office, on September 24, 2007, MARO rejected it and directed him to re-file it at the institution.  [R. 3-4, at 1.]  Instead of doing so, Antonelli waited until December 16, 2007, to request that he be given a "Restricted Pass" allowing him to be released from his cell early to get to the commissary line before other prisoners.  [R. 3-4, at 3, 4.]  The warden denied that request on January 22, 2008, noting that Antonelli already had a "restricted group pass" which allowed him to leave his cell early to go to

the food service area and the commissary line before other prisoners, and that he was allowed to sit on a bench while waiting for his order to be filled, contradicting his statement that he was forced to stand. [R. 3-4, at 5.]

Antonelli did not appeal that decision in a timely fashion. Instead, on February 29, 2008, he filed a Form BP-230 with MARO acknowledging that his appeal was not timely but explaining that his delay in filing was caused by his placement in segregation on January 24, 2008, and transfer to another institution. [R. 3-4, at 6.] Accordingly, MARO rejected the appeal as untimely on March 12, 2008, but explained that if Antonelli wished to pursue his appeal, he should re-submit it along with a letter from a prison staff member on BOP letterhead explaining the reason for the delay. [R. 3-4, at 8.] Instead of complying, Antonelli simply filed an appeal to the Central Office, which rejected the appeal as improper. By doing so, Antonelli failed to timely and properly exhaust his administrative remedies. While his placement in segregation and transfer to another institution may well have provided an adequate justification for Antonelli's failure to file a timely appeal, the BOP may reasonably require verification from a BOP staff member of the facts underlying his request, and need not rely on Antonelli's statement to this effect. Having refused to do so, his claim remains unexhausted. *Harris v. Rios*, 2009 WL 1458205, at *4 (E.D. Ky. 2009); *Jones v. Wilson*, 2009 WL 3211512, at *3 (E.D. Ky. 2009); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032–33 (10th Cir. 2002) (inmate's failure to cure deficiency which resulted in prison's proper rejection of grievance appeal renders claim unexhausted).

Antonelli's claim also fails on the merits. He complains that the defendants refused to permit him to go to the commissary line before all other inmates because he has a limp which

causes him to move slowly, and causes pain when he is forced to stand for extended periods.  [R. 3-4, at 3, 4.]  But in order to state an Eighth Amendment claim, Antonelli must show that prison officials were "deliberately indifferent" to his serious medical needs, a knowing and culpable state of mind demonstrated by circumstances such as "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Cuco*, 2006 WL 1635668, at *32.  Here, Antonelli had already been given a "restricted group pass" allowing him to leave his cell before other prisoners to go to the commissary line, and once there, was allowed to sit on a bench instead of standing while his order was being filled.  [R. 3-4, at 5.]  The defendants were clearly aware of Antonelli's physical limitations and granted him special privileges to accommodate them, the antithesis of the deliberate indifference.  *Cf. Marlin v. Jimenez*, 2006 WL 2547465, at *9, 22 (E.D. Ark. 2006); *Burkett v. Booker*, 2006 WL 2583371, at *5 (E.D Ky. 2006) ("So long as some medical accommodations were provided, there can be no deliberate indifference so long as the accommodations meet 'minimal standards of adequacy.'") (*quoting Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991)").

## G.

In Count VII of his complaint, Antonelli alleges that from November 2007 to February 7, 2008, prison officials harassed him because he helped two homosexual inmates file a grievance against an officer for sexual harassment.  [R. 3, at 15.]  In his inmate grievances, Antonelli clarified that on one occasion guards mocked and degraded him in front of other inmates in the food service area, resulting in intimidation and embarrassment.  [R. 3-4, at 16.]

19

The Court will dismiss this claim for failure to properly exhaust administrative remedies and for absence of any resulting physical injury. Antonelli filed his initial grievance on November 14, 2007, as a "sensitive" grievance at the regional level, which MARO properly rejected. [R. 3-4, at 16-17.] Antonelli then filed a grievance at the institution level on January 7, 2008, but filed an appeal to MARO the very next day. [R. 3-4, at 20-21.] MARO rejected that appeal on January 15, 2008, and the Central Office likewise rejected his subsequent appeal of that decision on January 31, 2008. [R. 3-4, at 22-24.] Because Antonelli refused to cure procedural defects in his regional and national appeals, his claims remain unexhausted and must be dismissed. *Cyrus*, 2007 WL 2155694, at *7-8. In addition, federal law does not permit a prisoner to pursue any claim "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Claims for purely emotional harm such as embarrassment or intimidation are precisely the types of claims this statute was expressly designed to preclude, and his claim must be dismissed. *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003); *Antonelli v. Walters*, 2009 WL 921103, at *29 (E.D. Ky. 2009).

## H.

In Count VIII, Antonelli alleges that during his stay at FCI-Manchester, from June 12, 2007, to February 7, 2008, the food service manager "inundat[ed] the food products with sugar bringing on diabetes." He contends that this constituted deliberate indifference to his health needs. [R. 3, at 16.]

Review of the inmate grievances filed by Antonelli establish that he failed to timely and properly exhaust this *Bivens* claim. The BOP's Mid-Atlantic Regional Office denied his appeal on February 8, 2008, but Antonelli did not file his appeal with the Central Office until March 13,

20

2008, after the 30 days in which to file such appeal had expired, 28 C.F.R. § 542.15(a), and the Central Office rejected the appeal on that ground.  [R. 3-5, at 8-10.]  In his Central Office appeal, Antonelli explained that it was being filed late because he did not receive MARO's rejection until that date because he had been transferred between prisons.  Accordingly, the Central Office advised him that he could resubmit his appeal if he "provide[d] staff verification on BOP letterhead documenting that the untimely filing of this appeal was not [his] fault."  [R. 3-5, at 10.]  As in his prior appeals, Antonelli made no effort to do so, rendering this claim unexhausted.

Antonelli's claim is also substantively without merit.  While he contends that he was forced to eat foods with high sugar content, the food service administrator responded that "you don't have to take all or any of that sugar if you don't want it"; that "[a]rtificial sweetener is also offered"; and that "we do offer some type of fruit as a healthy alternative."  [R. 3-5, at 4.]  In addition, Antonelli voluntarily purchased numerous items from the commissary during December 2007 and January 2008 that were high in sugar, exacerbating the very problem about which he now complains.  [R. 3-5, at 12.]  Under such circumstances, courts have rejected functionally-identical claims, noting that a prisoner can choose to reduce caloric intake by limiting the amount of food consumed or by increasing exercise, which leaves the total amount of calories consumed largely if not entirely within the inmate's control, and that diabetics can obtain medication to manage their blood sugar level.  *Cf. McCombs v. Marshall*, 1994 WL 387876, at *3-4 (N.D. Cal. 1994); *Wilson v. Woodford*, 2009 WL 839921 (E.D. Cal. 2009).

## I.

On December 9, 2007, Antonelli complained to prison staff that there was an "agonizing stench emitted from your sewers in the dishroom in the mess hall."  [R. 3-5, at 14.]  He complains in Count IX that the odor made him physically ill.  [R. 3, at 17.]

Antonelli failed to properly exhaust this claim.  The BOP's Central Office rejected his appeal on May 6, 2008, because he had failed to include a copy of either his appeal to the regional office or MARO's response to it, and directed him to cure the defect by filing copies of these documents within 15 days.  [R. 3-5, at 22.]  Antonelli made no effort to do so.  By failing or refusing to comply with the BOP's procedural rules, Antonelli deprived it of the opportunity to address the substance of his concerns, rendering his claims unexhausted.  *Woodford*, 548 U.S. at 90-91.  His allegation that he was exposed on a few occasions to unpleasant odors also fails to state a claim of constitutional dimension.  *Abdur-Reheem-X v. McGinnis*, 1999 WL 1045069, at *3 (6th Cir. 1999) (prisoner's allegation that he became nauseous from exposure to odors from human waste fails to state a claim because "[t]he Eighth Amendment protects Abdur–Reheem–X from conditions of confinement that are health threats; it does not shield him from conditions that cause mere discomfort."); *Bey v. Luoma*, 2009 WL 884630, at *2 (W.D. Mich. 2009); *Williams v. Luetzow*, 2006 WL 1627468, at *5-6 (W. D. Mich. 2006).

### J.

In Count X, Antonelli alleges that members of the BOP's psychology staff removed him from the Alcoholics Anonymous group at the prison in retaliation for his filing grievances against staff members.  [R. 3, at 17-18.]  On October 14, 2007, Antonelli filed a sensitive grievance with MARO, but in it he complained that staff members were present during the AA

meetings and would interfere when participants were sharing their experiences, practices he found objectionable.  [R. 3-6, at 1.]  MARO rejected this grievance as improperly filed.

On January 12, 2008, Antonelli filed a new grievance, this time at the institutional level. In it, he complained that a psychology staff member had documented his withdrawal from the AA program as a voluntary one, whereas Antonelli alleged that he had been expelled from the program, and asked that the records be corrected to reflect his version of events.  [R. 3-6, at 3.] The warden rejected that grievance as untimely because Antonelli filed it more than 20 days after the events about which he complained, a determination affirmed by MARO and the Central Office on appeal.  [R. 3-6, at 4, 6, 8.]  Throughout his appeals, Antonelli reiterated that "[s]taring everyone square in the face of the BP-9 is the heading showing my complaint was unequivocally one to correct/amend inaccurate records under the Privacy Act 5 USC Section 552a."  [R. 3-6, at 5.]  Nowhere in his grievances did Antonelli expressly state or imply that staff members had taken any action against him in retaliation.

This claim will be dismissed for failure to exhaust administrative remedies.  In addition to the fact that Antonelli's grievances were plainly not timely filed,[2] the allegations stated in his complaint are not exhausted because they assert a claim entirely different from the one he actually raised.  In his grievances, Antonelli repeatedly stressed that the documentation of his termination from the AA meetings was incorrect and that he sought a correction of his personal records; in his complaint, he now alleges that staff members retaliated against him for filing grievances against them.  The purpose of the exhaustion requirement is to "give the agency a fair and full opportunity to adjudicate their claims ..."  *Woodford*, 548 U.S. at 90.  Therefore, to have

---

[2]  Records indicate that Antonelli ceased participation in AA meetings, voluntarily or otherwise, on September 14, 2007.  [R. 3-6 at 10]

23

exhausted a claim, the inmate's grievances "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004).

Here, Antonelli expressly asserted in his grievances that the records regarding the reason for his termination from AA meetings were inaccurate and sought their correction. Such a claim in no way placed prison officials on notice that he claimed that his termination from the AA meetings was done in retaliation for filing other, unrelated grievances against unidentified prison officials, a claim whose factual predicate is entirely different from the one he actual stated in his grievance. Because his grievances did not relate to the claim he now seeks to pursue, that claim is unexhausted. *Pruitt v. Holland*, 2011 WL 13653, at *4-7 (E.D. Ky. 2011); *Watson-El v. Wilson*, 2010 WL 3732127, at *9 (N.D. Ill. 2010) (where prisoner filed grievance challenging BOP's placement of administrative hold on his trust account as violation of due process, subsequent claim that hold was placed to coerce him to provide information on contraband "cannot [be pursued] in federal court having never given the prison the opportunity to investigate and correct the situation. The plaintiff's grievance was insufficient to alert prison officials to the 'nature of the wrong.'"); *Johnson v. Woodford*, 2010 WL 4007308, at *4 (C.D. Cal. 2010) ("Where one set of facts and circumstances gives rise to more than one potential claim, the plaintiff cannot exhaust all of the potential claims by merely exhausting one such claim.").

**K.**

In Count XI, Antonelli alleges that on December 28, 2007, he was called into the lieutenant's office, who performed a pat-down search "so hard that he jammed my testicles with his hand in a rough and obtrusive manner," and then threatened to place him in segregation

indefinitely unless he withdrew his FTCA claim for damages from the absence of adequate shelving.  [R. 3, at 18.]  However, when he was later interviewed by BOP staff regarding the incident, Antonelli clarified that the search "was rough, but not in an assaultive manner," and that the lieutenant had merely explained that purchasing shelves from another inmate, as he admitted doing in his FTCA claim Form 95, was prohibited conduct that could result in placement in segregation.  [R. 3-7, at 6.]

Because Antonelli failed to properly exhaust this claim, it must be dismissed.  On December 30, 2007, Antonelli filed a "sensitive" grievance with the regional office regarding his allegations, which MARO rejected as not raising a sensitive issue, and hence filed at the wrong level.  [R. 3-6, at 23, 24.]  On January 20, 2008, Antonelli reiterated his allegations in a Form BP-229 filed with the warden.  [R. 3-6, at 26.]  Instead of waiting for a response, the very same day Antonelli filed an appeal  to MARO, which MARO promptly rejected as prematurely filed, as did the Central Office upon review of Antonelli's appeal.  [R. 3-7, at 1-2, 4.]  Because Antonelli failed or refused to correct the defects properly identified by both the regional and central offices, the BOP never reached the merits of his claims, rendering them unexhausted. *Williams*, 2007 WL 3119548, at *9-10.

## L.

Antonelli alleges in Count XIII that the washrooms at UNICOR facilities did not have enough toilets, sinks, or mirrors, causing the inmates to have to wait their turn and lose privacy, and had insufficient ventilation resulting in unpleasant odors.  [R. 3, at 19; R. 3-7, at 22.]

Antonelli's allegations fail to state a claim of constitutional dimension, and must be dismissed because he suffered no physical injury.  To state a plausible claim that the conditions

of his or her confinement are unconstitutional, a prisoner must allege that he or she suffered an objectively serious deprivation resulting in the denial of the minimal civilized measure of life's necessities. *Farmer v. Brennen*, 511 U.S. 825, 834, 842 (1994); *Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984). Here, Antonelli alleges only that he and other prisoners experienced some delay before using the prison's restroom facilities and endured some odor from the lack of ventilation, matters of inconvenience which do not implicate Eighth Amendment concerns. *King v. Berghuis*, 2010 WL 565373, at *3 (W.D. Mich. 2010) ("Absent such extreme conditions raising serious risks to prisoner health, the courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim.") (collecting cases); *Hochman v. Rafferty*, 1989 WL 200955, at *5-6 (D.N.J. 1989) (complaints regarding the adequacy of recreation and restroom facilities and ventilation do not rise to the level of Eighth Amendment violations); *Biggins v. Danberg*, 2010 WL 2104275, at *7 (D. Del. 2010) (short term exposure to cramped or unpleasant conditions does not constitute an substantial deprivation necessary to establish a constitutional violation). While prison facilities must adequately provide the necessities of life, such as food, clothing, and shelter, prisoners are not entitled to "the amenities, conveniences and services of a good hotel." *Harper v. Kentucky Dept. of Corrections*, 2007 WL 204002, at *3 (E.D. Ky. 2007). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

Finally, Antonelli alleges a loss of privacy and experiencing unpleasant odors from the facilities, claims that manifestly fail to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e). *Sosa v. Strain*, 2007 WL 1521441, at *4 (E.D. La. 2007) ("Even if the Court were to

construe plaintiff's hunger pangs and discomfort from the unpleasant smells as physical injuries, they were, at best, *de minimis* injuries. *De minimis* injuries are insufficient to meet the 'physical injury' requirement of § 1997e(e).") (collecting cases); *Higgs v. Easterling*, 2012 692610, at *12-14 (W.D. Ky. 2012); *Biggins*, 2010 WL 2104275, at *7.

## M.

In Count XIV, Antonelli alleges that prison officials employed aliens awaiting deportation in UNICOR facilities in violation of 8 U.S.C. § 1324a in order to pay both them and citizen prisoners a reduced wage. [R. 3, at 20.]

This claim must be dismissed because Antonelli failed to exhaust his administrative remedies with respect to it and because it is substantively without merit. On December 26, 2007, Antonelli filed a grievance with the warden with respect to this issue, which the warden denied on January 14, 2008, noting that an inmate is eligible for UNICOR employment until the BOP receives legal notification from the Bureau of Immigration and Customs Enforcement that an order for deportation has been entered. [R. 3-8, at 18, 19.] Antonelli appealed that response to MARO, which denied his appeal on February 28, 2008. [R. 3-8, at 20-21.] Under 28 C.F.R. § 542.15(a), Antonelli was required to file an appeal from that denial within thirty days, but did not do so until April 19, 2008, and the Central Office therefore rejected his appeal as untimely. [R. 3-8, at 22-23.] Because Antonelli failed to comply with the BOP's procedural guidelines when filing his appeal, he failed to properly exhaust this claim, requiring its dismissal. *Cyrus*, 2007 WL 2155694, at *7-8.

In addition, Antonelli's allegations fail to state a constitutional claim, because prisoners have no constitutional right to employment in prison at all, let alone at a particular position or

27

rate of pay. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) ("[t]he Constitution does not create a property or liberty interest in prison employment."); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("no prisoner has a constitutional right to a particular job or to any job."); *Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995) (inmate's reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life); *Karacsonyi v. Radloff*, 885 F.Supp. 368 (N.D.N.Y.1995) (prison officials have broad discretion in denying federal inmates the opportunity to participate in UNICOR and that federal prisoner's participation in UNICOR did not confer liberty interest sufficient to trigger a constitutional due process protection). Further, the wages paid to inmates employed by UNICOR are established pursuant to 18 U.S.C. § 4126, and include various categories and grade levels determined for each prisoner at the discretion of UNICOR without regard to the prisoner's criminal history or custodial status. 28 C.F.R. § 345.50-55. Finally, Antonelli can claim no compensable injury even had the defendants violated Section 1324a, because that section is enforceable exclusively by the Attorney General, and "does not create a private right of action enforceable by parties adversely affected by a violation of the statute." *A.L.L. Masonry Constr. Co., Inc. v. Omielan*, 2009 WL 2214026, at *8 n.8 (N.D. Ill. 2009).

### N.

In Count XV, Antonelli complains that there was a "gross disparity" between the value of the work he performed while employed at UNICOR from July 2007 through January 2008 and the wages he was paid. [R. 3, at 21.] The nature of his claim is clarified in his inmate

grievances, where he complained that the pay rates given to different jobs within UNICOR did not properly reflect the skill or effort involved and should be changed.  [R. 3-9, at 1, 6.]

This claim must be dismissed because Antonelli failed to exhaust his administrative remedies with respect to it and because it is substantively without merit.  On November 18, 2007, Antonelli filed a sensitive grievance with the regional office, which properly rejected the grievance because it did not raise a sensitive issue.  [R. 3-9, at 1, 2.]  After informally complaining to staff, on January 8, 2008, Antonelli filed a grievance with the warden with respect to this issue, which the warden denied on January 18, 2008.  [R. 3-9, at 6, 7.]  Antonelli appealed that decision to MARO, which denied his appeal on February 28, 2008.  [R. 3-9, at 8, 9.]  Under 28 C.F.R. § 542.15(a), Antonelli was required to file an appeal from that denial within thirty days, but did not do so until April 19, 2008, and the Central Office therefore rejected his appeal as untimely.  [R. 3-9, at 10, 11.]  Because Antonelli failed to comply with the BOP's procedural guidelines when filing his appeal, he failed to properly exhaust this claim, requiring its dismissal.  *Parker v. Hickey*, 2011 WL 839563, at *3 (E.D. Ky. 2011); *Knight v. Growse*, 2010 WL 2696612, at *2 (E.D. Ky. 2010).

As with his prior claim, Antonelli's complaint regarding his pay grade fails to state a claim under *Bivens* because he has no constitutional right to be paid at all for his work or at a particular rate of pay.  *Ivey*, 832 F.2d at 955 ("no prisoner has a constitutional right to a particular job or to any job."); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) (claim against BOP for not paying a fair wage for their work "fails because prisoners do not have a legal entitlement to payment for their work."); *Ali v. Morgan*, 2009 WL 872896, at *3 (E.D. Ky. 2009)

(prisoner's claim that he was not paid the proper wage for work failed to state claim of constitutional dimension)

## O.

In Count XVI, Antonelli alleges that he was harassed and ultimately fired[3] from his UNICOR job after he complained about his pay rate.  [R. 3, at 21-22.]  Count XVII also relates to his UNICOR job termination, and provides further factual details.  Antonelli alleges that on December 28, 2007, he was given a written warning for his failure to make the factory's production quota that day, and later he was called into the lieutenant's office to discuss this failure.  On January 2, 2008, he received a warning ticket for failing to make the production quota.  Antonelli contends the warning ticket was not issued because of his production but in retaliation for his grievances regarding his pay rate.  [R. 3, at 22.]

These claims must be dismissed for failure to exhaust administrative remedies.  On December 16, 2007, Antonelli filed a Form BP-229 with the warden, complaining that the UNICOR factory manager threatened to fire him because he complained about being paid at the "piecework" rate.  [R. 3-10, at 6.]  Instead of waiting for a response, the very same day Antonelli filed an appeal to the regional office, which was promptly rejected as prematurely filed pending response from the warden.  [R. 3-10, at 8, 9.]  Antonelli appealed that rejection as well, but the Central Office likewise rejected the appeal on the same ground as MARO, directing him to wait for a response from the warden, [R. 3-10 at 10, 11] directions Antonelli disregarded.  Antonelli filed a separate grievance challenging the propriety of the written warning he received, which the

---

[3]  It is unclear whether Antonelli was actually fired, as he was transferred to another institution shortly after the initial written warning was given, [R. 3-10 at 22], and subsequent grievance documents make no mention of any termination from UNICOR employment.  The Court nonetheless takes this factual allegation as true at this juncture.

warden denied on February 5, 2008, noting that Antonelli had previously received repeated verbal warnings from UNICOR staff because he had "failed to meet the minimum quotas on a regular basis." [R. 3-10, at 16, 17.]  While in transit to another prison, Antonelli filed multiple appeals to the regional office [R. 3-10, at 18-19, 21.]  Before MARO decided his appeal on May 9, 2008, [R. 3-10 at 22] on April 18, 2008, Antonelli filed several appeals to the Central Office, [R. 3-10, at 23, 25.] which were rejected as premature.  [R. 3-10, at 24, 26.]  In each instance, the BOP provided clear direction to Antonelli about how the procedural error could be corrected, but he failed or refused to do so.  Because Antonelli failed to properly exhaust his administrative remedies, these claims must be denied.  *Woodford*, 548 U.S. at 90; *White v. Warren*, 2009 WL 276950, at *7, n.1 (E.D. Mich. 2009).

Further, this claim is substantively meritless.   To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that he engaged in constitutionally-protected conduct, and motivated by that conduct, the defendant took adverse action against him.  *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).  With respect to the first element, generally "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000).  But this conduct is not protected if the underlying grievance is frivolous.  *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996). There is no question that Antonelli's underlying grievance that he was entitled to *both* grade pay and "piecework" pay as an additional incentive was frivolous.  As previously discussed, not only does he lack any constitutional entitlement to pay for work in the prison, but the rate at which he is paid is a matter vested entirely to the discretion of UNICOR officials under the implementing regulations.  28 C.F.R. § 345.50-55.  Because Antonelli has no constitutional right to press

31

frivolous grievances, a retaliation claim predicated upon such a grievance fails as a matter of law. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Savage v. Sims*, No. 6:11-11-GFVT (E.D. Ky. 2011).

## P.

In Count XVIII, Antonelli alleges that on December 24, 2007, the warden removed Christmas trees from the units because Muslims complained about their presence. [R. 3, at 23.] In his grievances, he complained that he was offended by this and other accommodations to other religious groups. [R. 3-11, at 19.]

This claim must be dismissed for failure to exhaust administrative remedies and as substantively meritless. Antonelli filed an inmate grievance at the institutional level on December 25, 2007, but did not wait for a response from the warden before filing an appeal with the regional office on January 20, 2008. [R. 3-11, at 19, 20.] After MARO rejected the appeal as prematurely filed, on March 5, 2008, Antonelli appealed that rejection to the Central Office, which likewise advised him that he must wait for the warden's response before appealing. [R. 3-11, at 21-23.] Because Antonelli failed or refused to pursue his administrative remedies in accordance with the BOP's guidelines and directions, this claim must be dismissed for failure to properly exhaust administrative remedies. *Woodford*, 548 U.S. at 90-91. In addition, Antonelli's free exercise claim fails as a matter of law. The Supreme Court has long held that the Free Exercise Clause is not implicated unless the government imposes a substantial burden upon the observation of a belief or practice that is central to the adherent's religious faith. *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *Thomas v. Review Board of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981) (religious exercise concerns are implicated by "conduct

mandated by religious belief"). However, the establishment and observation of a Christmas tree is a secular tradition, not a central tenet of Christian faith. *Cf. County of Allegheny v. A.C.L.U. Greater Pittsburgh Chapter*, 492 U.S. 573, 616 (1989) ("The Christmas tree, unlike the menorah, is not itself a religious symbol. Although Christmas trees once carried religious connotations, today they typify the secular celebration of Christmas.")

## Q.

In Count XIX, Antonelli alleges that prison staff had an unspoken policy to delay and impede the filing of inmate grievances in an effort to prevent him from filing lawsuits. [R. 3, at 24.]

Because Antonelli did not properly exhaust this issue and because it fails to state a claim of constitutional dimension, it must be dismissed. Antonelli filed an inmate grievance regarding this issue with the warden on January 20, 2008. [R. 3-12, at 11.] Before the warden responded but following his transfer to another institution shortly thereafter, on April 18, 2008, Antonelli filed an appeal to the regional office, which rejected the appeal as premature. [R. 3-11, at 14, 15.] On May 21, 2008, the Central Office rejected Antonelli's appeal on the same ground. [R. 3-11, at 16, 17.] Having failed to properly exhaust this claim, it must be dismissed. *Parker*, 2011 WL 839563, at *3. In addition, as Antonelli has been advised in prior litigation, this claim fails as a matter of law because there is no constitutional right to an effective grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (placing prolific inmate on modified access status did not implicate First Amendment right-of-access concerns because there is no right to an effective grievance process) (*citing Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

**R.**

In Count XX, Antonelli alleges that he was falsely accused of participating at a work stoppage at UNICOR, and was then transferred to another prison in retaliation for exercising his right to petition the government for the redress of grievances.  [R. 3, at 24-25.]

This claim must be dismissed because Antonelli failed to properly exhaust it.  On March 6, 2008, Antonelli filed a Form BP-229 asserting his claims, and further alleging that he had been denied a hearing before the transfer, as well as access to the phone and law library.  But instead of filing that grievance at FCI-Memphis where he was then incarcerated, he mailed the grievance form to USP-McCreary and insisted that it be addressed there.  [R. 3-13, at 2-3.] Because he filed his grievance at the wrong prison, the administrative remedy coordinator rejected the grievance and directed Antonelli to file it at his current place of incarceration.  28 U.S.C. § 542.14(c)(4); BOP Program Statement 1330.16 § 13(a) ("A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member.").  [R. 3-13 at 4.]  Instead, Antonelli appealed to the regional office and Central Office, both of which rejected his appeals on the same ground.  [R. 3-13, at 6-9.]  Because Antonelli failed to correct this deficiency, his claims remain unexhausted, and must be dismissed.  *Bingham*, 654 F.3d at 1175.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)      The Complaint filed by Michael C. Antonelli [R. 3] is **DISMISSED;**

(2)      The Court will enter an appropriate judgment; and

(3)      This matter is **STRICKEN** from the active docket.

This 19th day of September, 2012.

34



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**